THE ROUND LAKE SANITARY DISTRICT, Plaintiff-Appellant, *v.* BASIC ELECTRONICS MANUFACTURING CORPORATION, Defendant-Appellee.

Second District   No. 77-40

Opinion filed May 12, 1978.

M. R. Conzelman, of Conzelman, Schultz & Snarski, of Waukegan, and Joseph N. Sikes, of Grays Lake, for appellant.

John R. Sloan, of Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

In 1972, the plaintiff-appellant, the Round Lake Sanitary District (hereinafter the plaintiff), filed count I of its two-count complaint in the circuit court of Lake County. Count I resulted in an agreed court order placing a limit on the amount of copper the defendant-appellee, Basic Electronics Manufacturing Corporation (hereinafter the defendant), could discharge into the effluent that it placed in the plaintiff's sanitary sewer system. In November 1975, the plaintiff petitioned for a rule to show cause for contempt of court, alleging continued violations of the prior order of court. No immediate action took place on the contempt petition, but in March 1976, the plaintiff filed count II of its complaint, seeking $53,675 in damages to compensate it for expenses it incurred as a result of the defendant's alleged violations of the earlier court order. After hearing testimony on the matter, the trial court held that the plaintiff could not recover compensatory damages in a contempt action, and, therefore, count II of the plaintiff's complaint failed to state a cause of action. The trial court further held that even if count II of the plaintiff's complaint did state a cause of action, the plaintiff did not meet its burden of proof. Finally, the trial court denied the plaintiff's petition for a rule to show cause because the defendant's violations of the earlier court order had not been shown to have been willful.

Upon weighing the arguments presented and reviewing the record, we are of the opinion that the circuit court of Lake County should be affirmed as to its finding that count II of the plaintiff's complaint did not state a cause of action on the grounds that compensatory damages are not recoverable in a contempt proceeding in Illinois. However, because the circuit court was apparently under the erroneous impression that the defendant's violations of the earlier court order had to be willful to constitute contempt, the cause must be remanded to the circuit court for further proceedings.

On June 27, 1972, the plaintiff filed a complaint for an injunction, seeking to prohibit the defendant from placing any copper or cyanide into the sanitary sewer system operated by the plaintiff. On June 29, 1972, Judge Lloyd A. Van Deusen granted a temporary injunction prohibiting the defendant from placing any copper or cyanide into the plaintiff's sewer system. That cause was set for a hearing on July 6, 1972. On that date the parties agreed to the entry of an order requiring the defendant to continually monitor the amount of copper in its effluent so as to reduce the amount of copper in its effluent to no more than four parts per million for

the next six months, and to require the defendant to present to the court within 60 days an engineering study of how it could reduce the copper in its effluent to a level of not more than two parts per million. An order formally requiring the defendant's effluent to contain no more than two parts per million of copper was entered on January 8, 1974. On November 4, 1975, the plaintiff filed a petition for a rule to show cause why the defendant should not be held in contempt for allegedly violating the January 8, 1974, court order. Finally, on March 22, 1976, the plaintiff filed count II of its complaint, seeking $53,675 in damages it claimed it suffered as a result of the defendant's alleged violations of the January 8, 1974, court order establishing the two parts per million standard.

In count II the plaintiff alleged that the excess copper placed in its sanitary sewer system as a result of the repeated violations of the two parts per million standard caused a disruption in the operations of its sewage treatment plant. In essence, the plaintiff contends that the defendant's repeated violations of the two parts per million standard caused a build-up of copper in the digesters of the plaintiff's sewage treatment plant. This build-up of copper killed the bacteria in the digesters responsible for digesting sludge. Fully digested sludge may be spread on beds to dry in the open air without giving any offensive odors. However, incompletely digested sludge exudes extremely offensive odors and thus may not be dried on open beds. Because the bacteria in its digesters were killed by the build-up of copper, the plaintiff alleged its sewage treatment plant could produce only incompletely digested sludge which plaintiff was forced to pay to have hauled away. In count II, plaintiff seeks to recover the $53,675 it expended to have its incompletely digested sludge hauled away, plus other cost items.

The record contains clear and unrefuted evidence that the defendant did in fact violate the two parts per million standard during 1975. The defendant took and tested some 877 samples of its effluent in 1975. Of those samples, 400 revealed levels of copper in excess of the two parts per million standard established by the 1974 court order. However, the expert witnesses called by both sides disagreed on the question of whether or not the build-up of copper had, indeed, caused the breakdown in the operation of the plaintiff's sewage treatment plant. After hearing evidence on the entire controversy, the trial court ruled that count II of the plaintiff's complaint did not set forth a cause of action since in Illinois a plaintiff may not recover compensatory damages in a contempt proceeding. The trial court also found that the plaintiff had not met its burden of proof, even if count II did state a cause of action. The trial court also declined to find the defendant in contempt, holding that the defendant's violations of the 1974 court order did not constitute contempt because they had not been done willfully.

■■ The plaintiff's first contention is that count II of its complaint did state a cause of action sufficient for it to recover the damages it sought. In support of this position the plaintiff cites *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492; *Union Tool Co. v. Wilson* (1922), 259 U.S. 107, 66 L. Ed. 848, 42 S. Ct. 427; *Parker v. United States* (1st Cir. 1946), 153 F.2d 66; and *In re Federal Facilities Realty Trust (Darrow v. Kulp)* (7th Cir. 1955), 227 F.2d 657, all of which support the Federal rule that a defendant may be compelled to pay a fine imposed as a result of civil contempt to the plaintiff to compensate the plaintiff for damages he suffered as the result of the defendant's contempt. The rationale for this rule is set out in *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492, where the United States Supreme Court adopted the view that civil contempt proceedings were part of the underlying case and were designed to compensate the plaintiff. In *Rothschild & Co. v. Steger & Sons Piano Manufacturing Co.* (1912), 256 Ill. 196, 99 N.E. 920, the Illinois Supreme Court rejected the United States Supreme Court's rationale expressed in *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492 and held that in Illinois it was well settled that civil contempt is not a private remedy but is punishment for an affront to the authority of the court and hence, any fine imposed is payable to the public treasury and not to the plaintiff. Thus, it is clear that in Illinois a plaintiff may not recover compensatory damages in a civil contempt proceeding. Accordingly, we affirm the circuit court's ruling that count II of the plaintiff's complaint failed to state a cause of action.

In this light we do not reach the question of whether or not the plaintiff sustained its burden of proof as to causation. However, we do emphasize that our ruling in this case will not act as a bar to a subsequent action for damages. Indeed, counsel for the defendant conceded at oral arguments that this contempt proceeding would not have a *res judicata* effect upon such an action.

■■ Finally, we come to the question of whether or not the defendant was in contempt of court. Despite uncontradicted evidence that 400 of the 877 tested samples revealed levels of copper in excess of the two parts per million standard imposed by the court's 1974 order, the trial court did not find the defendant to be in contempt, apparently believing that the violations had to be willful to constitute contempt. The trial court was in error in that belief. We find the case at hand to be analogous to the situation found in *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 319 N.E.2d 472. There the parties entered into an agreed order concerning the installation of some pollution control equipment. Fry did not meet the agreed deadline for the installation of the equipment and was found to be in contempt. On appeal, Fry argued that its failure had

44

not been willful and therefore did not constitute contempt. Our supreme court rejected the argument, holding:

> "* * * the intent of the defendant is not relevant in determining whether it should be adjudged in civil contempt of the agreed order." (59 Ill. 2d 131, 137, 319 N.E.2d 472, 476.)

In the case at hand there was an agreed order calling for the reduction of the amount of copper in the defendant's effluent. The defendant did not reduce the copper content to the level provided by the agreed order. The trial court refused to find the defendant in contempt solely because it found the defendant's violations were not willful. In that regard the trial court was in error, and the cause must be remanded to the circuit court for further proceedings to determine if the defendant should be found in contempt of court.

Affirmed in part; reversed in part; remanded with directions.

NASH and WOODWARD, JJ., concur.