*In re* MARRIAGE OF MONICA L. BLANKSHAIN, Petitioner-Appellant, and ROBERT D. BLANKSHAIN, Respondent (Wachovia Securities Inc., f/k/a First Union Securities Inc., Appellee).

Second District   No. 2—03—0196

Opinion filed March 4, 2004.

Theodore G. Gailan, of Law Offices of Theodore G. Gailan, of Bloomingdale, for appellant.

Peter R. Sonderby, of Peter R. Sonderby, P.C., of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Monica L. Blankshain, appeals the trial court's order dismissing her amended petition for rule to show cause against appellee, Wachovia Securities Inc., f/k/a First Union Securities Inc. We affirm.

In December 1999, Monica petitioned for a dissolution of her marriage to respondent, Robert D. Blankshain. The trial court entered an agreed temporary order under section 501(a)(2)(i) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/501(a)(2)(i) (West 1998)), enjoining Monica and Robert from removing money from certain accounts, including Robert's accounts with appellee. The order further stated, "[u]pon notice of this order [appellee] shall cease all activity on these accounts. This includes but is not limited to purchase, sales, deposits or withdrawals by any party."

In February 2002, Monica filed a petition for rule to show cause against Robert and appellee for violating the injunction. Monica alleged that appellee received a copy of the injunction order in January 2000. She further alleged that in October 2000, Robert transferred the funds from his individual retirement account (IRA) with appellee to a new account with GunnAllen Financial before dissipating most of the money. Monica alleged that appellee had acted "in active concert and/or participation" with Robert to wrongfully transfer the funds. See 735 ILCS 5/11—101 (West 2002) (injunction orders binding upon persons in active concert or participation with parties to the action). Monica sought, among other things, the return of the value of the transferred account and the incarceration of Robert and the employee of appellee responsible for the transfer. Appellee moved to dismiss the petition under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)).

In April 2002, the trial court entered an agreed dissolution judgment between Monica and Robert. Monica received the funds in all the accounts she held with appellee, as well as the funds remaining in Robert's GunnAllen account. As part of the judgment, Monica agreed to withdraw the petition for rule to show cause against Robert and discharge him from any liability relating to the transferred funds. The judgment included the statement that Monica "reserved to right to pursue repayment" of the funds from appellee.

In July 2002, the trial court granted appellee's motion to dismiss Monica's petition for rule to show cause. The trial court ruled that Monica had not alleged sufficient facts to hold appellee responsible on the issue of active concert or participation. Monica filed an amended

petition in which she again requested that appellee be ordered to return the transferred funds, though Monica no longer sought the incarceration of appellee's employee. Appellee moved to dismiss the amended petition under section 2—615. After a hearing, the trial court granted appellee's motion. It ruled that the injunction order could not be enforced because it had been terminated by the final dissolution judgment, and that compensatory damages could not be awarded in an indirect civil contempt proceeding. Monica timely appealed.

■ On appeal, Monica argues that the trial court erred by granting appellee's motion to dismiss her amended petition for rule to show cause. When determining whether a cause of action is stated for purposes of a section 2—615 motion to dismiss, the court must view the allegations in the light most favorable to the plaintiff and accept as true all well-pleaded facts and reasonable inferences derived from those facts. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147 (2002). We review *de novo* an order granting a section 2—615 motion to dismiss. *Oliveira*, 201 Ill. 2d at 147-48.

■ ■ We first examine what type of contempt proceeding took place. Contempt can be either direct or indirect and either criminal or civil. Direct contempt arises from conduct that occurred in the judge's presence, whereas indirect contempt arises from conduct that occurred outside of the judge's presence. *In re Marriage of Ruchala*, 208 Ill. App. 3d 971, 977 (1991). Here, the alleged contempt was indirect because the fund transfer took place outside of the trial judge's presence. To obtain a finding of indirect criminal contempt, the party bringing the action must notify the alleged contemnor of the criminal nature of the proceedings by labeling the pleading as a petition for adjudication of criminal contempt. *In re Marriage of Morse*, 240 Ill. App. 3d 296, 304 (1993). Monica's petition for rule to show cause contained no such designation. Therefore, we agree with the trial court that the proceeding was for indirect civil contempt.

■ A civil contempt proceeding seeks to coerce the contemnor to comply with a court order, and unlike a criminal contempt proceeding, its goal is not punishment. *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 111 (1999). In this case, the temporary injunction order that Monica sought to enforce terminated upon the entry of the dissolution judgment (see 750 ILCS 5/501(d)(3) (West 2002)), so appellee could not have been forced to comply with the order. See *In re Marriage of Ignatius*, 338 Ill. App. 3d 652, 660-61 (2003). Moreover, compensatory damages may not be awarded in a civil contempt proceeding. *Keuper v. Beechen, Dill & Sperling Builders, Inc.*, 301 Ill. App. 3d 667, 669-70 (1998). In *Keuper*, this court stated:

"In Illinois, it is well established that civil contempt is an affront to the authority of the court and not a private remedy, that any fine imposed pursuant to the contempt is payable to the public treasury and not a plaintiff, and that a plaintiff may not recover compensatory damages in a civil contempt proceeding. [Citations.] Because a sanction in a civil contempt proceeding is strictly coercive, the court is without the authority to compensate an aggrieved party for its damages." *Keuper*, 301 Ill. App. 3d at 669-70.

■Monica maintains that she sought "redress and remedy," rather than compensatory damages, by requesting that appellee "put back the money from where it came." However, according to Monica's allegations, the funds were transferred to an account that Robert held with a different company, and he subsequently spent most of the money. Appellee was therefore not capable of returning the funds because it did not have possession or control of them. We conclude that in seeking to have appellee use its own money to fund the IRA account at its previous level, Monica sought compensatory relief unavailable in a civil contempt proceeding. Accordingly, the trial court did not err in granting appellee's motion to dismiss.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

BYRNE and KAPALA, JJ., concur.